UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

| | | |
|---|---|---|
| PATRICK HAYDEN and MELISSA HAYDEN, on behalf of their Minor Child, A.H., | ) ) ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | 1:10-cv-1709-RLY-DML |
| | ) | |
| GREENSBURG COMMUNITY SCHOOL CORPORATION, Greensburg Community School Board Members, LISA TRESSLER, in her official and individual capacities, DAVID WEIGEL, in his official and individual capacities, VALERIE MOORMAN, in her official and individual capacities, DAVE MEYER, in his official and individual capacities, AL MOORE, in his official and individual capacities, TONY OWENS, in his official and individual capacities, STEVE TAYLOR, in his official and individual capacities, Greensburg Community Schools Superintendent TOM HUNTER, in his official and individual capacities, Greensburg Junior High Principal DAVE STROUSE, in his official and individual capacities, Greensburg Junior High Assistant Principal and Athletic Director DEBBIE SMITH, in her official and individual capacities, Greensburg Varsity Head Boys' Basketball Coach STACY MEYER, in his official and individual capacities, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

1

The Greensburg Community School Corporation ("School Corporation") instituted a mandatory haircut policy (the "Haircut Policy") that requires members of the boys' basketball teams in both the junior high and high school to wear their hair above their ears and collar.  Coach Stacy Meyer ("Coach Meyer"), the boys' high school head varsity coach, established the Haircut Policy pursuant to School Board Policy 5511 and the School Corporation's Athletic Code.

In the fall of 2010, Plaintiffs' son, A.H., tried out for the Greensburg Junior High School boys' basketball team, even though his hair was not in compliance with the Haircut Policy.  The junior high school boys' basketball coaches informed A.H. that if he did not comply with the Haircut Policy, he could still be a member of the team, but would be unable to play in basketball games.  After Melissa Hayden, A.H.'s mother, met with school officials, A.H. was informed that if he did not comply with the Haircut Policy, he would be removed from the team.  A.H. declined to cut his hair, taking the position that the Haircut Policy violated his constitutional rights.  A few days later, he was removed from the team.

Plaintiffs, on behalf of A.H., bring the present action against the School Corporation; Greensburg Community School Board Members Lisa Tressler, David Weigel, Valerie Moorman, Dave Meyer, Al Moore, Tony Owens, and Steve Taylor (collectively "School Board"); as well as, the superintendent of Greensburg Community Schools, Tom Hunter ("Superintendent Hunter"); the principal of Greensburg Junior High School, Dave Strouse ("Principal Strouse"); the assistant principal and athletic director of

Greensburg Junior High School, Debbie Smith ("Assistant Principal Smith"); and Coach

Meyer (collectively "Individual Defendants").  Plaintiffs' Amended Complaint is

confusing, and raises a host of claims against the Defendants in both their official and

individual capacities.  As best the court can discern, Plaintiffs allege that the Haircut

Policy, as applied to male basketball players, constitutes gender discrimination in

violation of A.H.'s right to equal protection (Am. Compl., Count II ¶ 17).  Plaintiffs

further allege that the School Board and the Individual Defendants, in both their

individual and official capacities, denied Plaintiffs a hearing before the School Board

before terminating A.H. from the team, and that the Haircut Policy that they enforced and

condoned infringed A.H.'s fundamental right to wear the hairstyle of his choice, in

violation of A.H.'s right to procedural and substantive due process (*Id*., Count III ¶ 2; IV

¶¶ 3-5, 12; Count V ¶¶ 9, 12; Count VI ¶¶ 9, 22; Count VII ¶ 8).  Plaintiffs further allege

that: (1) the School Corporation discriminated against A.H. based on his gender, in

violation of 20 U.S.C. § 1681 ("Title IX") (*Id*., Count XI);[1] (2) that Superintendent

Hunter, Principal Strouse, and Assistant Principal Smith retaliated against A.H. for

challenging the Haircut Policy (*Id*. Count I ¶ 99; Count VI ¶ 22; Count VII ¶ 6; Count

VIII ¶ 5, (3) that Superintendent Hunter, Principal Strouse, and Assistant Principal Smith

intentionally disclosed to Northern Wells Middle School A.H.'s confidential information

(*Id*. Count I ¶¶ 101-02; Count VI ¶ 15; Count VIII ¶ 4); and (4) that the Defendants, in

---

[1] The Amended Complaint does not contain a Count X; Count IX is followed by Count
XI.

both their individual and official capacity, violated A.H.'s right to education under Article 8 of the Indiana Constitution (Count XII).

During a telephonic conference on July 30, 2012, the parties agreed to submit this case to the court for final resolution. The parties have since filed a Joint Stipulation of Facts, and proposed Findings of Facts and Conclusions of Law. Plaintiffs' proposed Findings of Fact and Conclusions of Law did not address the following claims: (1) Plaintiffs' Title IX retaliation claim, (2) Plaintiff's claims for the alleged release of confidential information; or (3) Plaintiffs' right to education claim under Article 8 of the Indiana Constitution. In the absence of any evidence or argument in support of those claims, the court finds those claims are **WAIVED**.

The court now issues its Findings of Facts and Conclusions of Law pursuant to Federal Rule of Civil Procedure 52(a).

## FINDINGS OF FACT

1.  Plaintiffs, Patrick and Melissa Hayden, live in Greensburg, Indiana, and are the parents of A.H., a male who was fourteen years old when this case commenced. (Am. Complaint ¶¶ 4, 6).

2.  The School Corporation is located in south-central Indiana with administrative offices located in Greensburg, Indiana. The School Corporation serves 2,290 students through one elementary school, one junior high school, and one senior high school. (*Corporation Snapshot, Greensburg Community Schools #1730*, http://mustang.doe.state.in.us/SEARCH/snapshot.cfm?corp=1730).

4

3.      The School Corporation is a recipient of federal funding.  (Am. Complaint ¶ 18).

4.      Superintendent Hunter is the superintendent of the School Corporation.  (*Id.* ¶ 10).

5.      Principal Strouse is the principal at Greensburg Junior High School.  (*Id.* ¶ 11).

6.      Assistant Principal Smith is the assistant principal and athletic director at Greensburg Junior High School.  (*Id.* ¶ 12).

7.      Coach Meyer is the head varsity boys' basketball coach at Greensburg High School.  (*Id.* ¶ 13).

8.      The School Corporation administrators operate under the direction and control of the School Board, which is comprised of President Lisa Tressler, Vice President David Weigel, Secretary Valerie Moorman, and School Board Members Dave Meyer, Al Moore, Tony Owens, and Steve Taylor.  (*Id.* ¶ 9).

9.      The School Board is the ultimate decision-maker for the School Corporation. (*Greensburg Community Schools Bylaws & Policies*, http://www.neola.com/greensburg-in/).

10.      At all relevant times, each Defendant acted under color of state law.  (Am. Complaint ¶ 14).

**I.      The Haircut Policy**

11.    The School Board has adopted Policy 5511, entitled "Dress and Grooming," which provides, in pertinent part, that "the Superintendent shall establish such grooming guidelines as are necessary to promote discipline, maintain order, secure the safety of students, and provide a healthy environment conducive to academic purposes."

(*Id.* ¶ 22).

12. Policy 5511 also states that "[s]uch guidelines shall establish the dress requirements for members of athletic teams, bands, and other groups representing the [School] Corporation at a public event," and "designate[s] the principal as the arbiter of student dress and grooming in his/her building." (*Id.*).

13. Furthermore, Policy 5511 provides that "[e]ach principal, in consultation with his/her staff, shall develop a dress code which complies with School Board Policy 5511." The dress code established by the principal "should delineate what types of clothing or manner of clothing does not comply with the School Board Policy and why such clothing or manner of wear is not permitted." (*Id.* 29).

14. In connection with these policies, the School Board approved the Greensburg Junior High School Athletic Code of Conduct ("Code"), which governed student athletes. (*Id.* ¶¶ 32-33). The Code contains a specific section on hair styles, that provides, in pertinent part, that:

> Hair [s]tyles which create problems of health and sanitation, obstruct vision, or call undue attention to the athlete are not acceptable. Athletes may not wear haircuts that include insignias, numbers, initials, or extremes in differing lengths. Mohawks are not acceptable, and hair coloring is not permitted. Each varsity head coach will be responsible for determining acceptable length of hair for a particular sport. Ask a coach before trying out for a team if you have a question regarding hair styles.

(*Id.* ¶ 32).

15. Pursuant to the Code, Coach Meyer, as the Greensburg High School Boys'

6

Basketball Coach, established the Haircut Policy.  (*Id.* ¶ 13).  The Haircut Policy

applies to both the Junior High School and High School boys' basketball teams,

and requires that basketball players have their hair cut above their ears, eyebrows,

and collar.  (*Id.* ¶ 15).

## II.   Application of the Haircut Policy to A.H.

16.   On October 25, 2010, A.H. tried out for the Greensburg Junior High School eighth

grade boys' basketball team.  (*Id.* ¶ 35).

17.   At that time, the length of A.H.'s hair did not comply with the Haircut Policy.

(*Id.* ¶¶ 33, 45).  The coaches informed A.H. that if he failed to follow the Haircut

Policy, he could still be a member of the basketball team, but would not be able to

participate in practices or games.  (*Id.* ¶¶ 46-47).

18.   On October 26, 2010, Melissa Hayden met with Coach Meyer to discuss the

Haircut Policy.  (*Id.* ¶¶ 49-50).

19.   Coach Meyer explained to Melissa Hayden that the purpose of the Haircut Policy

was to promote an image of "clean cut" boys, as well as to institute "uniformity"

for the sake of team unity.  (*Id.* ¶ 52).

20.   On October 27, 2010, Melissa Hayden met with Principal Strouse to discuss the

Haircut Policy.  (*Id.* ¶ 56).  Principal Strouse informed her that he supported the

Haircut Policy and would not excuse A.H. from being subject to it.  (*Id.* ¶ 57).

21.   On October 29, 2010, A.H. learned that he made the Greensburg Junior High

School boys' basketball team.  (*Id.* ¶ 60).

22.    Although A.H.'s hair did not conform with the Haircut Policy, he was permitted to practice with the team on October 29, 2010, November 1, 2010, and November 2, 2010.  (*Id.* ¶ 61).

23.    During follow-up meetings with administrators at Greensburg Junior High School, Plaintiffs took the position that the Haircut Policy was unconstitutional, and that A.H. should not be required to comply with it.  (*Id.* ¶ 66).

24.    On November 1, 2010, Melissa Hayden met with Superintendent Hunter regarding her objections to the Haircut Policy.  (*Id.* ¶¶ 62, 64).  Superintendent Hunter disagreed with Melissa Hayden's objections, and declared his intent to enforce the Haircut Policy.  (*Id.* ¶ 63).

25.    Plaintiffs requested a hearing before the School Board, but their request was denied.  (*Id.* ¶¶ 76, 88).

26.    On November 2, 2010, the coaches informed the members of the boys' basketball team that any student who did not comply with the Haircut Policy by November 4, 2010, would be removed from the team.  (*Id.* ¶ 73).

27.    On November 4, 2010, A.H. came to practice with his hair longer than the Haircut Policy permitted, and he was terminated from the team.  (*Id.* ¶¶ 78-79).  Another player, T.B., was also noncompliant with the Haircut Policy, and, like A.H., he was terminated from the team.  (*Id.* ¶¶ 80-82).

**III.    Remainder of the 2010-2011 School Year**

28.    On November 5, 2010, A.H. moved out of the School Corporation, and went to

live with his maternal grandparents in Bluffton, Indiana.  (*Id.* ¶¶ 89, 92).

29. On November 12, 2010, the Decatur Circuit Court granted A.H.'s maternal grandparents' Verified Petition for Appointment of Co-Guardians, and entered an Order appointing A.H.'s maternal grandparents as his co-guardians.  (Docket # 31, Deposition of John Warwick at 63; Dep. Ex. 12).

30. The effect of the court order placed A.H.'s maternal grandparents as his permanent legal guardians, thereby changing his legal settlement from Greensburg to the Northern Wells School Corporation.  (*Id.*).

31. Plaintiffs believed that A.H. would be permitted to play basketball on the Northern Wells Middle School boys' basketball team; however, he was ultimately not permitted to do so.  (*Id.* ¶¶ 91, 95-96, 103).

**IV.  2011-2012 School Year**

32. Following the conclusion of the 2010-2011 school year, Plaintiffs terminated the guardianship order, and A.H. moved back to Greensburg to attend Greensburg High School for the 2011-2012 school year as a freshman.  (Docket # 36, Ex. 2, Termination of Guardianship Order; Docket # 36, Ex. 4, Affidavit of A.H. ¶ 2).

33. A.H. tried out for the Greensburg High School boys' basketball team, and earned a spot on the freshman squad. (Docket # 50, Affidavit of Melissa Hayden ("Melissa Hayden Aff.") ¶¶ 8-9;  Docket # 61, Affidavit of A.H. ¶¶ 5-6)

34. A.H. played basketball for Greensburg High School throughout the entire 2011-2012 basketball season with his hair cut in compliance with the Haircut Policy.

(Melissa Hayden Aff. ¶¶ 7, 10).

35.   Since the 2011-12 basketball season ended, A.H. has consistently worn his hair

longer then the Haircut Policy allows.

**V.   A.H. Transfers to Norwell High School**

36.   On November 5, 2012, A.H. went to the first day of tryouts for the Greensburg

High School boys' basketball team.  (Defendants' Suggestion of Mootness ¶ 5).

37.   At that time, A.H.'s hair was not in compliance with the Haircut Policy, and the

coaches advised him that he would not be permitted to practice until he complied

with the Haircut Policy.  (*Id.*).

38.   Shortly thereafter, A.H. transferred to Norwell High School again to live with his

maternal grandparents.  (*Id.* Ex. 1).

39.   Although A.H.'s parents, Patrick and Melissa Hayden, are currently separated,

they have joint custody of A.H. and his siblings.  (Separation Agreement, Docket #

90, Ex. 3).

40.   A.H.'s mother, Melissa Hayden, resides in Bluffton, Indiana with her parents.

(Melissa Hayden Aff. ¶ 14, Docket # 90).

41.   A.H.'s father, Patrick Hayden, continues to live in the Greensburg School District.

(*Id.* ¶ 17).

42.   Melissa Hayden testified that she and Patrick Hayden "may" allow A.H. to return

to Greensburg for his junior or senior year.  (*Id.* ¶ 21).

43.   A.H. testified that if he returns, he will continue to wear his hair longer than the

Haircut Policy allows.  (Affidavit of A.H. ¶ 8, Docket # 90).

## CONCLUSIONS OF LAW

1.    To the extent any of the foregoing findings of fact is a conclusion of law, it is

hereby adopted as a conclusion of law.  To the extent any of the conclusions of law

set forth below is a finding of fact, it is hereby adopted as a finding of fact.

2.    The court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §§

1331, 1343 and 1367(a).

**I.    Section 1983 Constitutional Claims**

3.    Plaintiffs' federal constitutional claims against all Defendants in their individual

capacity are brought pursuant to 42 U.S.C. § 1983 ("Section 1983").  That section

provides a private cause of action against a person who, acting under color of state

law, deprives an individual of any "rights, privileges, or immunities secured by the

Constitution and laws" of the United States.  *Livadas v. Bradshaw*, 512 U.S. 107,

132 (1994) (quoting 42 U.S.C. § 1983).

4.    To prevail on a Section 1983 claim, a plaintiff must show that he or she suffered

the violation of a federal constitutional right by one acting under color of state law.

*London v. RBS Citizens, N.A.*, 600 F.3d 742, 745-46 (7th Cir. 2010).

5.    There is no dispute that the Defendants were acting under color of state law at all

relevant times.  Thus, the issue for the court is whether A.H.'s rights were violated

under the United States Constitution.

**A.    Due Process Claims**

11

6.     Plaintiffs bring both a procedural and a substantive due process claim against the

School Board and the Individual Defendants in their official capacity.  A claim

against these officials in their official capacity is tantamount to a claim against the

School Corporation, and the court will treat it as such.  *See*, *e.g.*, *Sow v. Fortville*

*Police Dep't*, 636 F.3d 293, 300 (7th Cir. 2011) (recognizing that a claim against a

municipal officer in his or her official capacity is construed as a claim against the

municipal entity itself).

7.     Plaintiffs also bring these same claims against the School Board and the Individual

Defendants in their individual capacities.  Specifically, Plaintiffs allege that the

School Board and the Individual Defendants denied A.H. procedural due process,

in the form of a hearing or a meeting as proscribed by the Greensburg

Administrative Guidelines, prior to Coach Meyer's decision (supported by those

administrators) to terminate A.H. from the basketball team.  Plaintiffs further

allege that the School Board and the Individual Defendants violated A.H.'s

"fundamental right to wear the hairstyle of his choice," and that their enforcement

of the Haircut Policy denies A.H. "an ingredient of personal freedom protected by

the United States Constitution."  Plaintiffs seek injunctive and declaratory relief  –

i.e., that the Individual Defendants be ordered "to allow: (1) A.H. to be able to play

basketball and to enjoin Defendants from terminating A.H. from the basketball

team and/or from punishing A.H. in any manner while a member of the basketball

team due to his hairstyle; [and to allow] (2) A.H. to reenroll into Greensburg

Schools . . . ."  (*See* Am. Complaint, Count III ¶¶ 2(c), 6, Section IV ¶¶ 3, 4, 5, 12).

Plaintiffs also seek compensatory damages against the Individual Defendants sued

in their individual capacities.  (*Id*. Count V ¶ 12; Count VI ¶ 22; Count VII ¶ 8;

Count IX ¶ 7).

8.  The court's jurisdiction is limited to live cases and controversies.  *See* U.S. CONST.

art. III, § 2.  In other words, the case must contain an actual, ongoing controversy

throughout the pendency of litigation.  *Bd. of Educ. of Downer's Grove Grade Sch.*

*Dist. No. 58 v. Steven L.*, 89 F.3d 464, 467 (7th Cir. 1996).

9.  "A case is moot when the issues presented are no longer 'live' or the parties lack a

legally cognizable interest in the outcome."  *Powell v. McCormack*, 395 U.S. 486,

496 (1969).

10.  To the extent A.H. seeks injunctive relief against the School Corporation, A.H.'s

transfer out of the Greensburg School District arguably moots his due process

claims, because the Amended Complaint is limited to the 2010-2011 basketball

season.

11.  "A case can avoid dismissal for mootness as capable of repetition yet evading

review" when: "'(1) the challenged action [is] in its duration too short to be fully

litigated prior to its cessation or expiration, and (2) there [is] a reasonable

expectation that the same complaining party would be subjected to the same action

again.'"  *Aslin v. Fin. Indus. Reg. Auth., Inc.*, – F.3d – , 2013 WL 11869, at * 4

(7th Cir. 2013) (quoting *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975) (per

13

curiam));  *Stotts v. Comty. Sch. Dist. No. 1*, 230 F.3d 989, 991 (7th Cir. 2000).

12.  As an initial matter, A.H. is subject to the Haircut Policy only during the high
school basketball season, which generally lasts from November through March of
a given school year.  This four month time span is too short for Plaintiffs' claims to
be fully litigated.  Second, there is a reasonable possibility that A.H. will return to
Greensburg and attempt to play basketball under Coach Meyer with a
noncompliant hairstyle, prompting yet another challenge to Coach Meyer's Haircut
Policy.   Melissa Hayden testified that she and Patrick Hayden "may allow A.H. to
return to Greensburg for his junior or senior school years so that he can be with his
childhood friends," and A.H. testified that if he returns, "it is [his] intention to
keep [his] hair longer than the unwritten hair cut policy." Thus, the court could
easily be faced with this factual scenario next year.  (Melissa Hayden Aff. ¶ 21,
Docket # 90; Affidavit of A.H. ¶ 8, Docket # 90 ).

13.  The procedural history of this case lends credence to this possibility.  In November
2010, A.H. left Greensburg to live with his maternal grandparents and attend
Northern Wells, and came back to Greensburg to play basketball as a freshman for
the 2011-2012 season.  A.H. currently resides with his maternal grandparents in
Bluffton, Indiana, and attends Northern Wells.  Accordingly, the court finds this
case falls within the exception to the mootness doctrine.

14.  Moreover, Plaintiffs seek compensatory damages from the Individual Defendants.
Those claims are not moot.  *Wernsing v. Thompson*, 423 F.3d 732, 745 (7th Cir.

2005) (" . . . injuries compensable in monetary damages can always be redressed by a court judgment").

15.    For the reasons set forth below, however, Plaintiffs' claims cannot survive on the merits.

### 1.    Due Process Claims Against the School Corporation

16.    The Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law."  U.S. CONST. amend. XIV § 1.

17.    A procedural due process claim requires a plaintiff to show: (1) the violation of a liberty or property interest (2) without adequate due process of law.  *Halfhill v. Northeast Sch. Corp.*, 472 F.3d 496, 500 (7th Cir. 2006).

18.    A.H. has no constitutionally recognized property interest in participating in extracurricular sports.  *Indiana High Sch. Ass'n, Inc. v. Watson*, 938 N.E.2d 672 (Ind. 2010); *see IHSAA v. Carlberg*, 694 N.E.2d 222, 224 (Ind. 1997) (holding that "a student has no constitutional right to participate in interscholastic athletics").

19.    To the extent Plaintiffs' claim that A.H. had a protectable liberty interest in the hairstyle of his choice, Plaintiffs fare no better.

20.    A citizen's choice of hairstyle is an element of liberty protected by the Fourteenth Amendment.  *Holsapple v. Woods*, 500 F.2d 49, 51-52 (7th Cir. 1974) (citing *Breen v. Kahl*, 419 F.2d 1034, 1036 (7th Cir. 1969); *see also Crews v. Cloncs*, 432 F.2d 1259, 1266 (7th Cir. 1970).  The issue here is whether that constitutional

15

protection applies equally to a public school student who wishes to play interscholastic sports.

21. Public schools may lawfully enact and enforce dress and grooming policies. *Blau v. Fort Thomas Pub. Sch. Dist.*, 401 F.3d 381, 394 (6th Cir. 2005) (rejecting claim that a dress code's prohibition on blue jeans violated student's fundamental rights under due process clause); *Gfell v. Rickelman*, 441 F.2d 444, 446 (6th Cir. 1971) (rejecting claim that public school's dress code that contained restrictions on hair length violated student's fundamental rights).

22. Moreover, schools may condition participation in interscholastic sports upon "a degree of regulation even higher than that imposed on students generally." *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 657 (1995). Indeed, "students who voluntarily participate in school athletics have reason to expect intrusions upon normal rights and privileges, including privacy." *Id.*

23. In a case upholding the constitutionality of a random urine testing program instituted by the Tippecanoe School Corporation for school athletes and cheerleaders, the Seventh Circuit noted that the Indiana High School Athletic Association imposes "extensive requirements" upon "individuals participating in interscholastic athletics" and "[s]uch regulations have been upheld against a variety of challenges under the federal constitution and Indiana law." *Schaill by Kross v. Tippecanoe Co. Sch. Corp.*, 864 F.2d 1309, 1319 & n.9 (7th Cir. 1988). Notably, the decision cited two cases upholding the constitutionality of grooming

16

policies as applied to interscholastic athletes.  *Id*. n. 9 (citing *Davenport v. Randolph Cty. Bd. of Educ.*, 730 F.2d 1395 (11th Cir. 1984) (upholding rule requiring interscholastic athletes to be clean shaven); *Humphries v. Lincoln Parish Sch. Bd.*, 467 So.2d 870 (La. App. 1985) (upholding removal of interscholastic athletes for violation of rule prohibiting facial hair during football season)).

24.    As a student wishing to participate in interscholastic sports in the Greensburg School Corporation, A.H. is subject to reasonable regulations, including Coach Meyer's Haircut Policy.  Thus, to the extent A.H. wishes to play basketball under Coach Meyer, A.H. does not have a protectable liberty interest to wear the hairstyle of his choice.

25.    Even if A.H's liberty interest was violated, Plaintiffs received adequate due process.

26.    In determining what process is due, the court considers three factors: "(1) the private interest affected by the official action; (2) the risk of erroneous deprivation of such interest through the procedures used and the probable value, if any, of additional procedural protections; and (3) the government's interest in maintaining the current procedures."  *Halfhill*, 472 F.3d at 502 (citing *Mathews v. Eldridge*, 424, U.S. 319, 335 (1976).

27.    Melissa Hayden had separate meetings with Coach Meyer, Principal Strouse, and Superintendent Hunter before Coach Meyer terminated A.H. from the basketball team.

17

28.   A.H.'s private interest in wearing a hairstyle prohibited by the Haircut Policy does

not outweigh the interest of the School Corporation or, more specifically, of Coach

Meyer, in maintaining the Haircut Policy.  Moreover, the risk of an erroneous

deprivation of A.H.'s liberty interest through the procedures used – in this case,

three separate meetings with school officials – was minimal, and additional

procedural protections would be of little value.

29.   A substantive due process claim requires a plaintiff to show that the government's

policy is completely arbitrary and lacking any rational connection to a legitimate

government interest.  *Turner v. Glickman*, 207 F.3d 419, 426 (7th Cir. 2000).

30.   The Haircut Policy is not the product of arbitrary government action.  *Kelley v.

Johnson*, 425 U.S. 238, 248 (1976); *see also Greater Chicago Combine & Ctr.,

Inc. v. City of Chicago*, 431 F.3d 1065, 1071-72 (7th Cir. 2005) (noting that

"governmental action passes the rational basis test if a sound reason may be

hypothesized") (quoting *Pro-Eco., Inc. v. Bd. of Comm'rs of Jay County*, 57 F.3d

505 (7th Cir. 1995))).  The Haircut Policy is rationally related to the legitimate

school interest of advancing an image of "clean cut boys" and uniformity for the

sake of team unity.  *Kelley*, 425 U.S. at 248-49.  *Blau*, 401 F.3d at 394 (finding

that plaintiff "cannot tenably claim that the dress code lacks a rational basis");

*Gfell*, 441 F.2d at 446-47 (upholding district court's finding that a rational

relationship existed between the school's dress code and the "maintenance of

discipline, promotion of safety in certain courses, and the furtherance of valid

18

educational purposes, including the teaching of grooming, discipline, and etiquette.").

31. Accordingly, Plaintiffs' Section 1983 procedural and substantive due process claims against the School Corporation are dismissed.

### 2. Due Process Claims Against the Individual Defendants

32. In order to succeed on a claim for individual liability under Section 1983, a plaintiff must show that "the individual defendant caused or participated in a constitutional deprivation." *Hildebrandt v. Ill. Dep't of Natural Res.*, 347 F.3d 1014, 1039 (7th Cir. 2003) (quotation omitted).

33. For the reasons set forth above, A.H. has not established the violation of a protected liberty or property interest under the Due Process Clause of the Fourteenth Amendment.

34. Accordingly, Plaintiffs' Section 1983 procedural and substantive due process claims against the Individual Defendants are dismissed.

### B. Equal Protection Claim Against all Defendants

35. Plaintiffs allege that "A.H. is being denied his Fourteenth Amendment right to equal protection of the laws because the mandatory haircut policy is not applied to any girl trying out for any sport." (Count II, ¶ 17a.).

36. "An equal protection plaintiff . . . need not prove a discriminatory policy against an entire class; discrimination against the plaintiff because of [his] membership in the class is by itself enough." *Bohen v. City of East Chicago, Ind.*, 799 F.2d 1180,

1187 (citing *Adickes v. Kress & Co.*, 398 U.S. 144, 152 (1970)).

37.     "To show a violation of the Equal Protection Clause, plaintiffs must prove that the

defendants' actions had a discriminatory effect and were motivated by a

discriminatory purpose." *Chavez v. Illinois State Police*, 251 F.3d 612, 635-36

(7th Cir. 2001).  As to the first element, in order "[t]o prove discriminatory effect,

the plaintiffs are required to show that they are members of a protected class, that

they are otherwise similarly situated to members of the unprotected class, and that

plaintiffs were treated differently from members of the unprotected class." *Id*. at

636.  In other words, Plaintiffs must show that: (1) Defendants treated him

differently from others similarly situated; (2) intentionally treated him differently

because of his membership in the class to which he belonged (male athletes); and

(3) this different treatment was not rationally related to a legitimate government

interest.  *Schroeder v. Hamilton Sch. Dist.*, 282 F.3d 946, 950-51 (7th Cir. 2002).

38.     "The gravamen of equal protection lies not in the fact of deprivation of a right but
in the invidious classification of persons aggrieved by the state's action.  A
plaintiff must demonstrate intentional or purposeful discrimination to show an
equal protection violation.  Discriminatory purpose, however, implies more than
intent as volition or intent as awareness of consequences.  It implies that a
decisionmaker singled out a particular group for disparate treatment and selected
his course of action at least in part for the purpose of causing its adverse effects on
the identifiable group."

*Nabozny v. Podlesny*, 92 F.3d 446, 453-54 (7th Cir. 1996).

39.     There is no evidence that the School Corporation, Coach Meyer, or any of the

other Individual Defendants intentionally discriminated against A.H. because of

his membership in the class of male athletes.  The Haircut Policy applied only to those male athletes who played basketball under Coach Meyer.  It did not apply to male athletes who played sports other than basketball, such as football, track, or wrestling.   Simply put, the Policy is not based on unlawful gender classifications.

40.     Plaintiffs' claim against the School Corporation and the Individual Defendants cannot survive.  Accordingly, Plaintiffs' equal protection claim against the Defendants is dismissed.

## II.     Title IX Claim

41.     Plaintiff also brings a claim of gender discrimination against the School Corporation under Title IX.

42.     Title IX prohibits discrimination on the basis of sex in educational programs or activities that are supported by federal financial assistance.  *See* 20 U.S.C. § 1981(a).

43.     While Title IX explicitly provides an administrative enforcement scheme, "the Supreme Court has recognized an implied private right of action for the victim of illegal discrimination to enforce the statute, as well as the ability to recover monetary damages."  *Hansen v. Bd. of Trs. of Hamilton Se. Sch. Corp.*, 551 F.3d 599, 604-05 (7th Cir. 2008) (citing *Franklin v. Gwinnett Cnty. Pub. Sch.*, 503 U.S. 60, 76 (1992)) (internal citation omitted).

44.     A school corporation "is subject to a private damages action only where it is deliberately indifferent to *known* acts of discrimination . . . ."  *Id.* at 605 (citing

*Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 291 (1998) (emphasis in original).

45.    While the Haircut Policy was not implemented against any female student athletes, it was also not applied to male student athletes who participated in sports other than basketball.  In other words, as stated above, the Policy as enforced does not discriminate against A.H. because of his gender.

46.    Because no act of discrimination occurred, the School Corporation is not liable under Title IX.  Plaintiffs' Title IX claim is therefore dismissed.

## CONCLUSION

47.    For the reasons set forth above, the court finds in favor of the Defendants on all counts alleged in Plaintiffs' Amended Complaint.  A judgment shall issue in favor of the Defendants and against the Plaintiffs in a separate document.

**SO ORDERED** on this 13th day of March 2013.

RICHARD L. YOUNG,  CHIEF JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.